*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0489p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

JAGUBHAI NARANBHAI PATEL, VANITABEN
THAKORBHAI PATEL,

                      *Petitioners,*

    *v.*

ALBERTO GONZALES, United States Attorney
General,

                      *Respondent.*

No. 04-3829

On Appeal from the Board of Immigration Appeals.
Nos. A90 303 169; A90 303 170.

Submitted: December 1, 2005

Decided and Filed: December 30, 2005

Before: CLAY and COOK, Circuit Judges; OLIVER, District Judge.[*]

---

**COUNSEL**

**ON BRIEF:** Margaret W. Wong, MARGARET WONG & ASSOCIATES, Cleveland, Ohio, for Petitioners. Emily Anne Radford, Keith I. Bernstein, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

---

**OPINION**

---

    CLAY, Circuit Judge. Petitioners, Jagubhai and Vanitaben Patel, appeal an order of the Board of Immigration Appeals ("BIA") entered on June 1, 2004 denying Petitioners' request for: (1) a discretionary waiver of deportation pursuant to § 212(i) of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. § 1182(i); (2) a discretionary waiver of deportation pursuant to § 237(a)(1)(H) of the INA, codified at 8 U.S.C. § 1227(a)(1)(H); and (3) a *nunc pro tunc* order legalizing Petitioners' 1993 entry into the United States. For the reasons set forth below, we **DENY** the petition for review.

---

[*] The Honorable Solomon Oliver, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

# I.
# BACKGROUND

## A.    Procedural History

On February 2, 2001, Sanjay Herat, a naturalized United States citizen, applied for immediate relative visas for his parents, Petitioners Jagubhai and Vanitaben Patel. The Immigration and Naturalization Service ("INS") approved Herat's application, and thereafter, Petitioners applied for an adjustment of their status to that of lawful permanent residents. At an interview to determine whether Petitioners were eligible for adjustment of status, an INS examiner learned that Petitioners gained entry into the United States through the use of fraudulent passports in 1993. Petitioners subsequently withdrew their applications for adjustment of status.

Based on the information the INS obtained in the interview, the INS initiated removal proceedings. On September 21, 2001, the INS issued Notices to Appear charging Petitioners with being subject to removal pursuant to § 212(a)(6)(A)(i) of the INA, codified at 8 U.S.C. § 1182(a)(6)(A)(i). Petitioners conceded removability and requested adjustment of status. Thereafter, Petitioners, through their attorney, filed an I-485 form requesting adjustment of status, an I-601 form requesting waiver of deportation, and an I-212 form requesting permission to reenter the United States.

After a hearing, the IJ issued a written opinion denying Petitioners' request for adjustment of status, and holding that Petitioners were ineligible for waiver under § 212(i) of the INA and *nunc pro tunc* relief. Petitioners appealed to the BIA, which adopted and affirmed the IJ's opinion. On June 24, 2004, Petitioners timely petitioned this Court for review of the BIA's decision.

## B.    Substantive Facts

Petitioners Jagubhai and Vanitaben Patel are natives and citizens of India. They first entered the United States in 1981 on a B-2 visa, and settled in Ohio where Petitioner Jagubhai owned and operated a motel. In 1986 and 1987, Petitioners brought their children Sanjay Herat, Jagruitben Patel, and Nimikaben Patel to join them. In 1992, Petitioners temporarily returned to India. One year later, in 1993, they returned to the United States. To gain entry, Petitioners used fraudulent passports.

In January 2001, Petitioners applied for permanent resident status on the basis of their son Sanjay's approved immediate relative visa. Sanjay Herat became a naturalized citizen of the United States in approximately 2000. Due to Petitioners' application for adjustment of status, however, the INS discovered that Petitioners entered the United States with fraudulent passports. Thereafter, Petitioners withdrew their applications for adjustment of status and the INS initiated removal proceedings.

In light of the Petitioners' 20 year residence in the United States, and family located in the United States, Petitioners sought a discretionary waiver of removal. In particular, they requested relief under § 212(i) of the INA, and a *nunc pro tunc* order retroactively admitting them to the United States. They also contend that their application requested relief under § 237(a)(1)(H) of the INA. The IJ denied discretionary waivers holding that Petitioners were not eligible for relief under the current version of § 212(i) of the INA and that it did not have the authority to issue a *nunc pro tunc* order retroactively admitting Petitioners into the United States. In a per curium order, the BIA adopted and affirmed the IJ's decision. Petitioners now appeal the BIA's decision, arguing that: (1) the IJ erred in applying the current version of INA § 212(i) to Petitioners' request for a discretionary waiver of removal as opposed to the 1993 version of INA § 212(i); (2) the IJ erred in

failing to address and grant Petitioners' request for a discretionary waiver of removal pursuant to INA § 237(a)(1)(H); and (3) the IJ erred in denying a *nunc pro tunc* relief.

## II.
## DISCUSSION

### A.    THE IJ PROPERLY APPLIED THE CURRENT VERSION OF INA § 212(i) TO PETITIONERS' REQUEST FOR A DISCRETIONARY WAIVER.

#### 1.    Jurisdiction

This Court does not have jurisdiction to review a decision of the BIA granting or denying a waiver of removal under  INA § 212(i) because such a decision is within the discretion of the Attorney General.  8 U.S.C. 1182(i)(1)-(2) ("The Attorney General may, in the discretion of the Attorney General, waive . . . ." and "No court shall have jurisdiction to review a decision or action of the Attorney General regarding a waiver under paragraph(1)").  In contrast, this Court does have jurisdiction to determine which version of § 212(i) applies to a particular alien. *Cervantes-Gonzales v. INS*, 244 F.3d 1001, 1005 (9th Cir. 2001).  The correct version of 212(i) to apply to an alien is a question of law not within the Department of Homeland Security's ("DHS") discretion. *Id.; see also Gjonaj v. INS*, 47 F.3d 824, 826 (6th Cir. 1995).

#### 2.    Standard of Review

Neither the BIA nor the IJ addressed the question of which verison of § 212(i) applies to Petitioners.  Therefore, this Court has nothing to review and must determine which version of § 212(i) to apply *de novo.*

#### 3.    Analysis

Petitioners contend that the IJ erred in concluding that Petitioners are ineligible for a discretionary waiver of deportation under § 212(i) of the INA because the IJ improperly applied the current version of § 212(i) to Petitioners' request for relief.  Petitioners argue that the 1993 version of § 212(i) applies to their request for relief because the conduct for which Petitioners are requesting a waiver occurred in 1993.  Because courts must apply the law in effect at the time of decision unless such law has a retroactive effect, and because the application of § 212(i) to Petitioners does not have a retroactive effect, the IJ properly applied the current version of § 212(i).  Therefore, this Court denies the petition for review to the extent it rests on the IJ's application of the current version of § 212(i) to Petitioner's case.

##### a.    INA § 212(i)

The current version of  § 212(i) of the INA grants the Attorney General the discretionary power to waive removal of an immigrant being deported on the basis of fraud.  8 U.S.C. § 1182(i) (2005).  To qualify for a waiver under § 212(i), an immigrant must be the spouse or child of a United States citizen or of an immigrant lawfully admitted for permanent residence. *Id.* Prior to the Illegal Immigration Reform and Immigrant Responsibility Act's ("IIRIRA") amendments to the INA in 1996, however, parents of United States citizens or of immigrants lawfully admitted for permanent residence also qualified for § 212(i)'s discretionary waiver.  8 U.S.C.§ 1182(i) (1993).   Because Petitioners are parents of a United States citizen, as opposed to a spouse or child, Petitioners are only eligible for a waiver under the pre-IIRIRA version of § 212(i).

### b.    Retroactivity

Petitioners contend that the application of the current version of § 212(i) is improper because application of the current version of § 212(i) has a retroactive effect on Petitioners.  Although Congress has the authority to enact retroactive statutes, courts ordinarily do not apply statutes retroactively unless a statute evidences congressional intent to apply retroactively. *Landgraf v. USI Film Prods.*, 511 U.S. 244, 267, 270 (1994).  Whether Congress intended a statute  to apply retroactively is a question of statutory interpretation.  *Id.* at 280.  In interpreting statutes, courts apply a presumption against retroactive application.  *Id.*  Thus, where a statute is silent as to the scope of its application, the statute should not be applied retroactively.  *Id.*

Not all statutes, however, raise retroactivity concerns.  "A statute does not operate retroactively merely because it is applied in a case arising from conduct antedating the statute's enactment."  *Id.* at 269; *Campos v. INS*, 16 F.3d 118, 122 (6th Cir. 1994).  Consequently, courts generally apply the law existing at the time of the decision as opposed to the law existing at the time that the conduct giving rise to the case occurred.  *Landgraf*, 511 U.S. at 280.

The application of law existing at the time of decision does not violate the presumption against retroactivity unless the statute in question has retroactive effects.  *Id.* at 269-70.  A statute has retroactive effects if the statute:

> attaches new legal consequences to events completed before its enactment.  The conclusion that a particular rule operates "retroactively" comes at the end of a process of judgment concerning the nature and effect of the change in the law and the degree of connection between the operation of the new rule and a relevant past event. . . . [F]amiliar considerations of fair notice, reasonable reliance, and settled expectations offer sound guidance.

*Id.*  Procedural rules generally do not have retroactive effect because procedural rules regulate secondary as opposed to primary conduct.  *Id.* at 275.  In contrast, rules that deprive persons of vested substantive rights may have retroactive effects if applied to conduct occurring prior to their enactment. *See id.* at 272.

The retroactive effect of the elimination of the § 212(i) waiver for parents of United States citizens is an issue of first impression in this Court.  Only two circuits, the Ninth and the Fourth have addressed this issue.  *Cervantes-Gonzales v. INS*, 244 F.3d at 1005-06; *Okpa v. INS*, 266 F.3d 313, 318-19 (4th Cir. 2001).  Both courts held that the restrictions on the availability § 212(i)'s waiver did not have a retroactive affect because an alien could not reasonably rely on the existence of a discretionary waiver to commit illegal conduct. *Cervantes-Gonzales v. INS*, 244 F.3d at 1006; *Okpa*, 266 F.3d at 319.

The Supreme Court has addressed the retroactive effects of a discretionary waiver contained in another subsection of § 212.  *INS v. St. Cyr*, 533 U.S. 289, 315-325 (2001).  In *St. Cyr*, the Supreme Court held that IIRIRA's elimination of the discretionary waiver of removal had a retroactive effect as applied to persons who pled guilty to removable offenses prior to IIRIRA's enactment. *Id.* at 322-325.  The Supreme Court reasoned that such persons may very well have pled guilty in reliance on the availability of a discretionary waiver. *Id.* at 322.  But for the eliminated waiver provisions such persons might have chosen a hearing over a guilty plea. *Id.*  The Court expressly rejected the INS's arguments that, 1) the INS's power to grant relief in deportation proceedings was "inherently prospective," and thus did not raise retroactivity concerns; and  2) the elimination of discretionary relief never raises retroactivity problems.  *Id.* at 324-25.  The Court stated that "[t]here is a clear difference, for the purposes of retroactivity analysis, between facing

possible deportation and facing certain deportation." *Id.* at 325 (citing *Hughes Aircraft Co. v. United States ex rel Schumer*, 520 U.S. 939, 949 (1997)).

This Court has limited the application of *St. Cyr* to aliens who plead guilty to removable offenses prior to the enactment of IIRIRA regardless of when the removable offenses occurred. *Garcia-Echaverria v. United States*, 376 F.3d 507, 516 (2004). In *Garcia-Echaverria*, this Court held that IIRIRIA's elimination of the a § 212(c) waiver did not have a retroactive affect on a defendant who pled guilty after the § 212(c) waiver was eliminated. *Id.* Although as Petitioner correctly observes, the defendant in *Garcia-Echaverria* committed the removable offense after the elimination of the § 212(c) waiver, that fact was not relevant to the outcome in *Garcia-Echaverria*. *See id.* at 516 n.8. This Court stated that the relevant conduct was the guilty plea and not when the offense was committed, presumably because the guilty plea was more likely than the criminal offense to be made in reliance on the waiver. *Id.*

### c.       As Applied in This Case

Section 212(i) is not intended to apply retroactively. It lists no effective date, and its legislative history gives courts no indication that it should be applied retroactively. *See* 8 U.S.C. § 1182(i); *Cervantes-Gonzales*, 244 F.3d at 1005; *Okpa*, 266 F.3d at 318-19. Thus, using the presumption of statutory construction explained in *Landgraf*, 511 U.S. 244, this Court should presume that Congress did not intend for 212(i) to apply retroactively.

Nonetheless, the IJ correctly applied the current version of § 212(i) to Petitioners. Courts should apply the law in effect at the time of the decision, unless such law has a retroactive effect on the parties. *Landgraf*, 511 U.S. at 273. Section 212(i) does not have a retroactive effect on Petitioners. *See Campos*, 16 F.3d at 122 (holding pre-*Landgraf* that elimination of a waiver for conduct that occurred prior to the elimination has no retroactive effect). The factors articulated in *Landsgraf* – fair notice, reasonable reliance, and settled expectations – weigh against finding a retroactive effect. *See id.* at 269-70. In likelihood, Petitioners did not enter the United States through fraud in reliance on the availability of the discretionary waiver. Nor did Petitioners have a settled expectation, given the fact that Petitioners' son was not a naturalized citizen in 1993, that they would receive a discretionary waiver based on their relationship with their son. Finally, unless Petitioners had notice of the waiver in the first place, they cannot rely on the argument that they need "fair notice" of the change. Thus, this Court joins the Fourth and Ninth Circuits in holding that the 1996 amendments to § 212(i) do not have a retroactive effect. *Cervantes-Gonzales v. INS*, 244 F.3d at 1006; *Okpa*, 266 F.3d at 319.

### B.       THIS COURT DOES NOT HAVE JURISDICTION TO REVIEW PETITIONERS' CLAIM THAT THEY ARE STATUTORILY ELIGIBLE FOR DISCRETIONARY WAIVERS UNDER THE CURRENT VERSION OF INA § 237(a)(1)(H).

This Court is without jurisdiction to review Petitioners' claim that they are eligible for a discretionary waiver under the current version of § 237(a)(1)(H). Petitioners failed to adequately raise the applicability of the current version of § 237(a)(1)(H) in their brief to the BIA. *Hasan v. Ashcroft*, 397 F.3d 417, 419 (6th Cir. 2005) (holding that this Court does not have jurisdiction to review claims not raised before the BIA). Petitioners mention § 237(a)(1)(H) only once in their brief on appeal to the BIA, and on that occasion admit that in its current form § 237(a)(1)(H) does not apply to their situation. (J.A. at 152) ("IIRAIRA retroactively withdrew Respondents' eligibility under [§ 237 and § 212] . . . ."). Although Petitioners mention the "former 241(f) [sic]," which is the pre-1996 version of § 237(a)(1)(H), on two additional occasions, this too is insufficient to preserve the applicability of § 237(a)(1)(H) for this Court's review. Reference to the pre-1996 version of § 237(a)(1)(H) did not place the BIA on notice that Petitioners were requesting relief

under the current version of § 237(a)(1)(H).  Therefore, we are without jurisdiction to grant a petition for review on this ground.

## C.      PETITIONERS ARE NOT ELIGIBLE FOR *NUNC PRO TUNC* RELIEF.

### 1.       Standard of Review

Although, this Court reviews the BIA's legal conclusions *de novo*, it must defer to the BIA's reasonable interpretations of the INA.  *INS v. Aguirre-Aguirre*, 526 U.S. 415, 424-25 (1999).  When the BIA has adopted and affirmed an IJ's decision, this Court reviews the IJ's decision directly. *Selami v. Gonzales*, 423 F.3d 621, 624-25 (6th Cir. 2005) (citing *Denko v. INS,* 351 F.3d 717, 726 (6th Cir. 2003)).  This Court need not defer, however, to an IJ's interpretation of the INA that conflicts with BIA precedent.  *See Rodriguez-Roman v. INS*, 98 F.3d 416, 427 (9th Cir. 1996) (declining to defer to an IJ's interpretation of the INA adopted by the BIA in a per curiam opinion that conflicted with BIA precedent).

### 2.       Analysis[1]

The IJ incorrectly determined that she did not have the authority to issue a *nunc pro tunc* order granting Petitioners a waiver pursuant to the 1993 version of § 212(i).  The IJ's interpretation of the 1996 amendments to the INA as abolishing her authority to issue *nunc pro tunc* orders for waivers of inadmissibility was unreasonable in light of BIA case law on *nunc pro tunc* orders. Nonetheless, we deny the petition for review because Petitioners are not eligible for a *nunc pro tunc* order granting a waiver of removability pursuant to the 1993 version of § 212(i).

### a.       *Nunc Pro Tunc* Relief

A *nunc pro tunc* order is an order that has retroactive legal effect.  Black's Law Dictionary 1097 (7th ed. 1999).  The BIA has long used *nunc pro tunc* orders to remedy the harshness of United States immigration laws.  *Edwards v. INS*, 393 F.3d 299, 308 (2d Cir. 2004) (citing *Matter of L*, 1 I. & N. Dec. 1 (A.G. 1940); *Matter of T*, 6 I. & N. Dec. 410, 413 (BIA 1954);  *Matter of A*, 3  I. & N. Dec. 168, 172-73 (BIA 1948)).  Among other uses, the BIA has issued *nunc pro tunc* orders to retroactively legalize an alien's admission into the United States thereby eliminating the grounds for deporting the alien.  *Matter of L*, 1 I. & N. Dec. at 1;  *Matter of  T*, 6 I. & N. Dec. at 413-14; *Matter of A*, 3 I. & N. Dec. 172-73.  For example, in the *Matter of T*, the BIA issued a *nunc pro tunc* order waiving an alien's perjury as grounds for deportation, despite the fact that the version of the INA in effect at the time the BIA issued the order did not authorize such a waiver.  *Matter of T*, 6 I. & N. Dec. at 413-14.  The BIA reasoned that the version of the INA in effect when the alien entered the United States authorized a waiver, and thus that the BIA had the authority to issue a retroactive order granting waiver based on the former version of the INA.  *Id.*

Although the INA does not explicitly confer the power to issue *nunc pro tunc* orders on the BIA, the BIA has interpreted the INA to implicitly confer such power.  *See Matter of L*, 1 I.&.N. at 5-6.  In 1940, the BIA concluded that Congress did not intend for immigration laws to operate in a "capricious and whimsical fashion," and that Congress therefore must have intended to allow the Attorney General to have discretion to correct errors through retroactive orders.  *Id.*  The BIA has held that the power to issue *nunc pro tunc* orders has survived numerous amendments of the INA, including amendments that restrict the availability of discretionary waivers.  *See Matter of T*, 6 I.

---

[1]This Court finds it unnecessary to address Petitioners' claim that the IJ and the BIA failed to meaningfully review Petitioners request for *nunc pro tunc* relief separately.  The IJ held that she did not have the authority to issue such relief, and thus clearly addressed Petitioners' request.  The real issue is whether the IJ's treatment of Petitioners' claim was legally correct.

& N. Dec. at 413-14 (granting a waiver *nunc pro tunc* where the petitioner was not eligible for discretionary relief under the current version of the INA due to an amendment to the INA restricting the availability of waiver)*; see also In re Po Shing Yeung*, 21 I. & N. Dec. 610, 624 (BIA 1997)(Rosenberg, Board Member, concurring in part and dissenting in part). As explained by the Second Circuit in *Edwards*,

> The BIA has, through much of § 212(c)'s history, explicitly deemed it appropriate to award § 212(c)'s waivers *nunc pro tunc*. And, despite multiple amendments and a recodification of the statute, Congress has not expressly countermanded this long-standing practice. Congressional reenactments, when made in the light of administrative interpretations of this kind, go a long way to precluding the INS's current contention [that the 1996 restrictions on availability of the § 212(c) waiver evince a congressional intent to preclude *nunc pro tunc* grants of § 212(c) waivers based on the pre-1996 version of § 212(c)].

*Edwards*, 393 F.3d at 309-10 (internal citations omitted).

Although the BIA has the authority to issue *nunc pro tunc* orders, it only issues such orders in two situations: (1) where the only ground of deportability or inadmissibility would thereby be eliminated; and (2) where the alien would receive a grant of adjustment of status in connection with the grant of any appropriate waivers. *In re Felipe Garcia-Linares*, 21 I. & N. Dec. 254, 259 (BIA 1996); *Matter of Roman*, 19 I. & N. Dec. 855, 857 (BIA 1988). In its earlier cases, the BIA also weighed the equities, including how long the Petitioner had resided in the United States and whether the Petitioner had family living in the United States. *Matter of T*, 6 I. & N. Dec. at 413-14; *Matter of A*, 3 I. & N. Dec. at 171-72.

Contrary to Respondent's assertion, the BIA does not grant *nunc pro tunc* orders only where the DHS (formerly the INS) erred causing an alien prejudice. Respondent mistakenly relies on cases in which federal courts have granted, or ordered the BIA to grant, *nunc pro tunc* orders, and not cases in which federal courts have remanded to allow the BIA to determine whether to grant *nunc pro tunc* relief. (Resp't Br. 24 (citing *Edwards*, 393 F.3d at 310).) In contrast, BIA case law indicates that the BIA has authority under the INA to issue *nunc pro tunc* orders even where there is no clear agency error. *Matter of T*, 6 I. & N. Dec. at 413-14; *Matter of A*, 3 I. & N. Dec. at 171-72; *see also Yeung*, 21 I. & N. Dec. at 624 (Rosenberg, Board Member, concurring in part and dissenting in part). Respondent offers no reason or authority suggesting that the standard appropriate in federal court is also the standard appropriate for the DHS.

The standard employed by federal courts should not be imposed on the BIA and overrule its longstanding precedent. It makes persuasive sense that the power of the BIA to enter *nunc pro tunc* orders is greater than that of federal courts. Unlike the BIA, Congress did not entrust the federal courts to implement the INA but rather to insure that the DHS and BIA act within their statutory authority under the INA. Where there is no agency error, this Court has no reason to be involved in immigration cases. In contrast, the BIA may reasonably determine that a *nunc pro tunc* order is necessary to effectively implement the goals of the INA even where the DHS has not erred. Therefore, the authority of the BIA to issue a *nunc pro tunc* order need not be interpreted to be identical to that of federal courts in immigration cases.

### b.    As Applied in This Case

Here, the IJ incorrectly assumed that she did not have the authority to issue a *nunc pro tunc* order granting Petitioners a discretionary waiver pursuant to the 1993 version of the INA. The IJ reasoned that the 1996 amendments to the INA eliminated § 212(i) waivers for parents of United States citizens, and thereby also eliminated the DHS's authority to issue *nunc pro tunc* orders

granting such waivers. Although the IJ's reasoning has facial appeal, it is unreasonable because it conflicts with BIA precedent. *Rodriguez-Roman*, 98 F.3d at 427 (declining to defer to IJ and BIA decisions in conflict with BIA precedent). Therefore, this Court will not defer to the IJ's interpretation of the INA and will instead follow the long-standing interpretation of the INA articulated by the BIA. As noted above, the BIA has interpreted amendments to the INA restricting the availability of discretionary waivers of deportation not to eliminate its authority to issue *nunc pro tunc* orders granting such waivers. *See Matter of T*, 6 I. & N. Dec. at 413; *see also Edwards*, 393 F.3d 299. Thus, the DHS has the authority to issue *nunc pro tunc* orders granting waivers under the pre-1996 version of the INA even though Congress has eliminated such waivers. *See id.*

Nonetheless, this Court will not grant the petition for review. Although the IJ has the authority to issue *nunc pro tunc* orders granting waiver under the 1993 version of the INA, and such relief would eliminate the sole grounds for removing Petitioners, Petitioners are not eligible for such relief. When Petitioners entered the United States in 1993, their son, Sanjay Herat, was not yet a United States citizen. Consequently, in 1993, Petitioners were not eligible for a discretionary waiver under the 1993 version of § 212(i). Thus, the IJ does not have the authority to grant such relief under the 1993 version of § 212(i). *See Matter of T*, 6 I. & N. Dec. at 413 (granting a discretionary waiver *nunc pro tunc* to an alien who qualified for the waiver at his time of entry).

**III.**
**CONCLUSION**

For the reasons set forth above, we **DENY** the petition for review.